IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Darrel King, | ) | C/A No. 3:10-3219-MBS-PJG |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Blanchard Machinery Company, | ) | |
| Defendant. | ) | |

The plaintiff, Darrel King ("King"), brings this action[1] against his former employer, Blanchard Machinery Company ("Blanchard"), alleging violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 25.) King filed a response in opposition (ECF No. 33) and the defendant replied (ECF No. 34). Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

**BACKGROUND**

The following facts are either undisputed or are taken in the light most favorable to King, to the extent they find support in the record. King worked for Blanchard for approximately eight years with a good performance record and no negative incidents. Beginning around 2008-2009, a confluence of events caused additional stress on King at work. Changes in the company and the

---

[1] The defendant removed this action from the Richland County Court of Common Pleas.

downturn in the national economy resulted in fewer workers in the transportation department, where King worked. Additionally, the untimely death of the manager of King's department caused King to experience additional stress in the workplace. The new manager, Raymond Boucher, Jr., required assistance from King in acclimating to his new position. By 2010, King was working fifteen-to-sixteen hour days. Boucher required King to move from his individual office to the dispatch desk in the front of the transportation area where King could be more accessible and where he would have a better view of the trucks coming in and out of the site. This relocation caused additional stress on King. King requested permission to move back into an office, informing Boucher that he was not able to concentrate and was experiencing memory problems. Boucher did not allow it.

On September 15, 2010, King experienced what was later described by his physician as an emotional, mental, and physical collapse. He arrived to work early and moved his things into the office left vacant by the deceased manager, telling a co-worker that he was going to "test them today." (Ringer Dep. 11:13-21, ECF No. 25-7 at 6.) When Boucher arrived he inquired of King why he had moved. King became emotional and told Boucher he needed to leave. Boucher testified that King was very "unclear about what he was trying to communicate" and was pacing in the office. (Boucher Dep. 35:7-20; ECF No. 25-5 at 19.) King left the office with his personal belongings and went home. Before leaving, he told a co-worker he "was gone." (Ringer Dep. 12:10-11, ECF No. 25-7 at 7.). The co-worker interpreted this comment to mean King had quit his job. After leaving the office, King called LaDonna Miller-Marshall in Blanchard's human resources department. According to Miller-Marshall, King informed her that he had quit and inquired about his benefits.

When King's wife returned home she found King sitting in a chair in the living room, crying uncontrollably and holding a gun. She took the gun from King and called Boucher. Boucher



informed Mrs. King that King had "walked out" because he "had to leave." (Robin King Decl. ¶ 4, ECF No. 33-4 at 2.) Mrs. King talked to Boucher again later that day; during that conversation Mrs. King learned that Boucher believed King had quit his job. She called Miller-Marshall to obtain paperwork to obtain medical leave. When Miller-Marshall told her that King had informed Miller-Marshall that he quit, Mrs. King informed Miller-Marshall that King had experienced a "major shut down" and had not quit. Boucher completed King's Employee Status Change Form reflecting that King had resigned and indicated that King was not eligible for rehire.

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

PJG

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     FMLA Claim**

The parties appear to agree that to establish a *prima facie* case that his employer interfered with FMLA rights, a plaintiff must show: (1) that he was an eligible employee; (2) that his employer was covered under the FMLA; (3) that he was entitled to FMLA leave; (4) that he gave his employer adequate notice of his intention to take leave; and (5) that his employer denied him benefits to which he was entitled. Edgar v. JAC Products, Inc., 443 F.3d 501, 507 (6th Cir. 2006); Rodriguez v. Smithfield Packing Co., Inc., 545 F. Supp. 2d 508, 516 (D. Md. 2008); see generally 29 U.S.C. § 2615(a)(1). Blanchard challenges King's ability to establish these required elements because, it contends, he was not eligible for FMLA benefits since he quit, and he failed to give Blanchard adequate notice of his intention to take leave.

An employee who voluntarily resigns before requesting FMLA leave is not protected by the statute. See Hammon v. DHL Airways, Inc., 165 F.3d 441, 447, 451 (6th Cir. 1999). The facts of



Hammon are similar to those presented here and the case is instructive in determining the question presented. In Hammon, the United States Court of Appeals for the Sixth Circuit held that a pilot who resigned after having emotional issues and confidence problems at work during training and testing was not eligible for FMLA leave when he later requested it after receiving a diagnosis from a physician that he was suffering from a nervous condition. See id. at 451.

Although King argues that an issue of fact exists regarding whether he voluntarily resigned from Blanchard on September 15, he does not dispute that he had a disagreement with his supervisor, then gathered his belongings and walked off the job, telling his supervisor and a co-worker that he was leaving. Moreover, although he disputes that he used the word "quit," he does not dispute that he conveyed his leaving to co-workers in manner suggesting his departure was permanent. On this record, no reasonable jury could find as a matter of fact that King did not relinquish his position at Blanchard. Moreover, although King conclusorily argues that he lacked the mental capacity to resign on September 15, nothing in his physicians' affidavits and medical records supports an inference that his medical problems and depression resulted in a lack of legal capacity to contract. See Macaulay v. Wachovia Bank of South Carolina, N.A., 569 S.E.2d 371, 375 (S.C. Ct. App. 2002) (stating that a individual's capacity to contract requires that he have "the mental capacity to understand or comprehend the subject of the contract, its nature, and its probable consequences"); cf. Lau v. Behr Heat Transfer System, Inc., 150 F. Supp. 2d 1017 (D.S.D. 2001) (finding that the plaintiff lacked the capacity to resign under South Dakota law when his employer presented him with a resignation form while he was involuntarily institutionalized based on his mental condition). This conclusion is further supported by the defendant's unrefuted evidence that King told his co-worker that he was

PJG

"gone" and he called Miller-Marshall to find out what the impact of his departure would be on his benefits.

Further, contrary to King's argument, the fact that Blanchard had reason to know that King was overworked and behaving uncharacteristically on September 15 is insufficient as a matter of law to show that Blanchard had notice of King's intention to take FMLA leave prior to King's separation from employment. Compare 29 C.F.R. § 825.301(b) (stating that employees are not required to specifically mention the FMLA to receive its protections) with Howard v. Inova Helath Care Servs., 302 Fed. App'x 166 (4th Cir. 2008) (unpublished) (suggesting that the employer must have notice of the FMLA-related issue).

**C.    ADA Claims**

King appears to assert violations of the ADA based both upon his alleged termination from employment and Blanchard's alleged failure to accommodate his disability. (See generally Am. Compl. ¶¶ 22-27, ECF No. 20 at 5-6.) To establish a *prima facie* case of discriminatory discharge based upon a disability, a plaintiff must show: (1) that he was a qualified individual with a disability; (2) that he was discharged; (3) that he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) that the circumstances of his discharge raise a reasonable inference of unlawful discrimination. See Rohan v. Networks Presentations LLC, 375 F.3d 266, 272 n.9 (4th Cir. 2004); Haulbrook v. Michelin N. Am., 252 F.3d 696 (4th Cir. 2001).

"In a failure to accommodate case, a plaintiff establishes a prima facie case by showing '(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such

*PJG*

accommodations.' " Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001) (alterations in original) (quoting Mitchell v. Washingtonville Ctr. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999)).

Under the ADA, a "disability" includes:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Without detailed analysis of this standard, King submits that he "has clearly produced sufficient evidence that he suffers from a disability . . . ." (Pl.'s Mem. Opp'n Summ. J. at 11, ECF No. 33 at 11.) Even assuming, however, that King's condition constituted a disability within the meaning of the statute, he cannot establish a *prima facie* case of a failure to accommodate or discriminatory termination.

The undisputed facts presented do not support an ADA claim on either theory. As presented,[2] King's failure-to-accommodate claim fails because on these facts no reasonable jury could find that Blanchard had notice of King's alleged disability until after King quit his job. See Schneider v. Giant of Maryland, LLC, 389 Fed. App'x 263, 270 (4th Cir. 2010) (suggesting that although the burden to provide notice is not an onerous one and that the employee need not mention the ADA or

---

[2] It is unclear whether King relies on a theory that Blanchard failed to accommodate his disability when it failed to reinstate him after Mrs. King informed Blanchard of his mental breakdown. However, because King has presented no evidence of any accommodation that he requested and that was denied him at that time which would have allowed him to perform the essential functions of his job, any such claim must also fail on this record. See 42 U.S.C. § 12111(8) ("The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.").

use the phrase "reasonable accommodation," he must inform the employer of both the disability and the employee's need for accommodations for that disability) (citing E.E.O.C. v. Fed. Express Corp., 513 F.3d 360, 369 (4th Cir. 2008)); cf. Braveboy v. New Millennium Building Sys., Inc., C/A No. 4:07-591-RBH, 2009 WL 2997500, at *4 (finding that even if the record lacked evidence that the employer knew that the plaintiff had been diagnosed with disabling bipolar disorder and major depression, the plaintiff had presented evidence that his supervisor knew he had been hospitalized and attempted to visit him in the hospital and that the supervisor observed the plaintiff's odd and uncharacteristic behavior, and that the plaintiff had not been permitted to talk to his supervisor between the time he left the hospital and the time he was terminated). Here, King does not dispute that prior to walking off the job, he had never missed work for medical treatment, never been hospitalized, never mentioned that he had any medical condition or disability that required accommodation, and never in fact requested any accommodation for any alleged disability. Thus, he cannot show that Blanchard had notice that King had a disability and a need for accommodation before he separated from employment.

Nor can King establish a *prima facie* case of discriminatory discharge. As discussed above, he cannot show that he was discharged. See Rhoads, 257 F.3d at 387 n.11 (providing the *prima facie* case for wrongful discharge under the ADA). Moreover, for the reasons stated herein, he cannot demonstrate that the circumstances of his separation from employment raise a reasonable inference of unlawful discrimination based on a disability. See id.

PJG

## RECOMMENDATION

While Blanchard's treatment of King following his mental breakdown at work after many years of dedicated service may reasonably be viewed as unsympathetic or unfair, it does not on this record appear to have violated either the FMLA or the ADA. Accordingly, the court recommends that Blanchard's motion for summary judgment be granted.

                                                                                               Paige J. Gossett
                                                                                              UNITED STATES MAGISTRATE JUDGE

August 20, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).