IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Darrel King, | ) | C/A No. 3:10-3219-MBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| Blanchard Machinery Co., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

On November 18, 2010, Darrel King ("Plaintiff") filed an action in the Court of Common Pleas for Richland County, South Carolina against his employer, Blanchard Machinery Company ("Defendant"). ECF No. 1. Plaintiff asserts claims under the Family and Medical Leave Act, 29 U.S.C. §§ 2601, et seq. ("FMLA"). On December 20, 2010, Defendant removed the action to district court. ECF No. 1. The following day, Defendant filed an answer. ECF No. 4. On August 31, 2011, Plaintiff filed an amended complaint that asserted claims under the FMLA, as well as the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"). ECF No. 20. Defendant answered the amended complaint on September 2, 2011. ECF No. 21. On January 23, 2012, Defendant filed a motion for summary judgment. ECF No. 25. Plaintiff responded to Defendant's motion on March, 8, 2012, ECF No. 33, and Defendant replied on March 16, 2012. ECF No. 34. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D. S.C., this matter was referred to United States Magistrate Judge Paige J. Gosset for pretrial handling.

On August 20, 2012, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court grant Defendant's motion for summary judgment. ECF No. 36. Plaintiff filed objections to the Report and Recommendation on September 7, 2012.

ECF No. 37. Defendant replied to those objections on September 24, 2012. ECF No. 38. For the reasons discussed below, the court grants Defendant's summary judgment motion.

## I. FACTUAL BACKGROUND

Plaintiff worked for Defendant for approximately nine years, beginning in 2001 until his departure on September 15, 2010. ECF No. 33-1 at 1. Plaintiff maintained a strong performance record until his departure. ECF No. 22-5 at 6 & 33-5 at 22. Around 2009, a confluence of events began to make Plaintiff's position in Defendant's transportation department more demanding. ECF No. 33-1 at 2-4. The combination of Defendant's restructuring, layoffs, and the death of the transportation department's manager added pressure and new responsibilities on Plaintiff. *Id.* Those new responsibilities included billing and dispatching trucks, both of which required Plaintiff to train himself. *Id.* In addition, the new transportation department manager, Raymond Boucher, Jr., was unfamiliar with the demands of the position and required Plaintiff's assistance to perform his managerial responsibilities. *Id.* at 3. By 2010, Plaintiff was working fifteen-to-sixteen hour days. *Id.* In light of Plaintiff's new dispatching responsibilities, Boucher required Plaintiff to move from his private office to the dispatch desk, located in a public, more accessible area of the transportation department. ECF No. 25-5 at 33. Plaintiff's new workspace was located near Boucher's, allowing Boucher to more readily obtain Plaintiff's assistance when necessary. ECF No 25-2 at 28. At the dispatch desk, Plaintiff found himself frequently distracted by drivers and vendors interrupting his work to ask him questions. ECF No. 33-1 at 3. As a result of those distractions, Plaintiff found it more difficult to focus on his responsibilities, and he began having memory and concentration problems. *Id.*

This work environment elevated Plaintiff's stress and anxiety. On August 17, 2010, Plaintiff saw his physician, Dr. Francis P. Goldstein. ECF No. 33-10. Dr. Goldstein prescribed Plaintiff sleeping medication. *Id.* Plaintiff returned on September 3, 2010, because he continued to have difficulty sleeping, and Dr. Goldstein prescribed Plaintiff anxiety medication. *Id.*

Several days prior to September 15, 2010, Boucher learned that Plaintiff had seen a doctor because he was having difficulty sleeping and that the doctor prescribed him sleeping medication. ECF No 25-5 at 8. On September 14, 2010, Plaintiff approached Boucher and sought permission to move from the dispatch desk back to his old office so that he could have more privacy, less disruption, and an easier time focusing on his responsibilities. ECF No. 33-2 at 3. Boucher did not permit Plaintiff to move on the grounds that Plaintiff's dispatch responsibilities required him to sit at the dispatch desk. ECF No. 25-5 at 17.

On September 15, 2010, Plaintiff arrived at work at 1:30 a.m. and moved his belongings from the dispatch desk to a vacant private office. ECF No. 33-2 at 3-4. According to the testimony of Charles Ringer, a co-worker, Plaintiff told him that he was going to "test them." ECF No. 25-7 at 6. Boucher arrived at around 7:30 a.m. and asked Plaintiff why he had moved and when he planned to return to the dispatch desk. ECF No. 33-2 at 4. Plaintiff became emotional and told Boucher, "I just need to leave." *Id.* Boucher testified that Plaintiff had difficulty communicating. ECF No 25-5 at 19. Plaintiff left the office with his personal belongings and went home. As Plaintiff left, he told Ringer that he was "gone." ECF No. 25-7 at 7. Ringer understood this to mean that Plaintiff had quit working for Defendant. *Id.* Before leaving, Plaintiff approached Boucher, shook his hand, and communicated that he was leaving. ECF No. 25-5 at 20. Plaintiff did not use the words "I quit." *Id.* After Plaintiff left, Ringer

spoke with Brock Lynch, Defendant's human resources manager, and told Lynch that Plaintiff

had packed his personal belongings, left the premises, and quit. ECF No. 25-6 at 5. Lynch

investigated and confirmed that Plaintiff's belongings were gone. *Id.* Eventually, Boucher also

contacted Lynch to inform him that Plaintiff had packed his belongings and quit. Lynch told

Boucher to change Plaintiff's employee status form to reflect that Plaintiff had resigned. ECF

No. 25-5 at 11 & 27.

When Plaintiff returned home, he called LaDonna Miller-Marshall in Defendant's human

resources department. ECF No 33-2 at 4. According to Miller-Marshall, Plaintiff informed her

that he had quit and inquired about what type of health benefits he could receive post-

termination. ECF No. 25-10 at 4. Miller-Marshall testified that she told Plaintiff that his

insurance coverage would continue until the end of the month, at which point he would have the

option of choosing to continue coverage under COBRA. *Id.* Miller-Marshall further testified

that Plaintiff indicated that neither option would be necessary because Plaintiff and his son could

obtain coverage through his wife's insurance plan. *Id.* Plaintiff's memory of the events of

September 15, 2010, including his phone call with Miller-Marshall, is limited. *Id.* To his

recollection, he inquired about the availability of short-term disability benefits, not post-

termination health benefits. ECF No. 33-2 at 3-4. Miller-Marshall's contemporaneously written

notes corroborate her deposition testimony of what inquiries Plaintiff made during her

conversation with Plaintiff. ECF No. 25-10 at 13.

When Plaintiff's wife returned home on September 15, 2010, she found her husband

sitting in a chair, crying, and holding a gun. ECF No. 33-4 at 2. Plaintiff's wife took the gun

from her husband. *Id.* Next, Plaintiff's wife contacted Boucher to determine what had happened

and inform him that Plaintiff would not be at work the following day due to his condition. *Id.* at

3. Boucher informed Plaintiff's wife that Plaintiff had walked out of work after telling people

that he needed to leave. ECF No. 33-4 at 2. When Plaintiff's wife and Boucher spoke again later

that day, Boucher indicated that Plaintiff had quit. *Id.* at 3.

On September 16, 2010, Plaintiff's wife called Miller-Marshall to obtain the required

paperwork for her husband's medical leave. *Id.* at 4. Miller-Marshall returned Plaintiff's phone

call on September 17, 2010, and informed Plaintiff's wife that because Plaintiff had quit, he was

not eligible for medical leave. *Id.* Plaintiff's wife corrected Boucher and explained that her

husband had experienced a "major shut down" but had not quit. *Id.*

On September 17, 2010, Plaintiff and his wife met for an initial consultation with Dr. Jim

H. Hutcheson regarding Plaintiff's condition. Attached to Dr. Hutcheson's affidavit is a letter

signed by him, dated September 28, 2010, and addressed to Plaintiff's attorney. ECF No. 33-9 at

3. The letter describes Plaintiff's condition and the course of "outpatient psychotherapy" Dr.

Hutcheson began with Plaintiff on September 17, 2010. *Id.* Based on Plaintiff's account of what

occurred on September 15, 2010, Dr. Hutcheson concludes in the letter that Plaintiff experienced

an "emotional, mental, and physical collapse." *Id.*

## II. DISCUSSION

### A. *Standard of Review*

### 1. *The Magistrate Judge's Report and Recommendation*

The Magistrate Judge makes only a recommendation to this court. The recommendation

has no presumptive weight. The responsibility for making a final determination remains with

this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). This court may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b) (1). This court may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. *Id.* This court is obligated to conduct a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.*

**2. *Summary Judgment***

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

**B. *Plaintiff's Claims Under the FMLA***

Plaintiff asserts two theories of recovery under the FMLA. First, Plaintiff claims that Defendant interfered with his right to take a medical leave of absence under the FMLA. Second, Plaintiff claims that Defendant terminated him in retaliation for invoking his rights under the FMLA.

**1.** *Plaintiff's Interference Claim*

Defendant moves for summary judgment as to Plaintiff's interference claim on the following three grounds: 1) Plaintiff was not an employee entitled to the FMLA's protection because he voluntary resigned from his position with Defendant on September 15, 2010; 2) Plaintiff did not suffer from a "serious health condition;" and 3) Plaintiff failed to provide Defendant notice of his intention to take a medical leave of absence.

a. *The Magistrate Judge's Report and Recommendation*

Upon review, the Magistrate Judge found that Plaintiff failed to establish a prima facie case for interference with his rights under the FMLA. Relying on *Hammon v. DHL Airways, Inc.*, 165 F.3d 441 (6th Cir. 1999), the Magistrate Judge observed that an employee who voluntarily resigns from a position before requesting FMLA leave is not an "eligible employee" entitled to benefit under the statute. After considering the evidence adduced by both parties, the Magistrate Judge found that no genuine issue of material fact exists as to whether Plaintiff voluntarily resigned from Defendant's employment. In addition, the Magistrate Judge found that Plaintiff has not established that he lacked the mental capacity to resign. The Magistrate Judge placed weight on Plaintiff's phone call to Miller-Marshall after leaving work on the day in question to inquire about post-termination health benefits. The Magistrate Judge found that even if the court were to find that Plaintiff did not resign on September 15, 2010, Plaintiff produced insufficient evidence to show that Defendant had adequate notice of Plaintiff's intention to take FMLA leave when he left work that day. Finally, the Magistrate Judge determined that although Defendant may have been aware that Plaintiff was overworked, experiencing high levels of

stress, and behaving unusually, that knowledge did not place Defendant on notice of Plaintiff's intent to take a medical leave of absence.

In Plaintiff's objections to the Magistrate Judge's Report and Recommendation, he argues that the Magistrate Judge failed to give appropriate weight to Plaintiff's evidence on the issue of whether he voluntarily resigned. Plaintiff relies on the fact that there is no evidence in the record that Plaintiff used the word "quit" on September 15, 2010. Plaintiff asserts that his call to Miller-Marshall after he left work is evidence that he did not quit. In this regard, Plaintiff cites to his affidavit in which he testified that he inquired about the availability of short-term disability benefits. That he did not quit, Plaintiff argues, is further supported by his wife's phone call to Boucher after Plaintiff returned home on September 15, 2010. In that conversation, Plaintiff cites his wife's affidavit in which she testified that she informed Boucher that her husband would not be at work the following day and inquired about the availability of short-term leave. Plaintiff asserts that if the Magistrate Judge had taken all of the evidence into consideration, she would have found that there was a genuine issue as to whether Plaintiff resigned. However, Plaintiff contends that even if the court finds that he resigned, a jury could find that he lacked the capacity to do so voluntarily. In support of that contention, Plaintiff points to his unusual behavior on September 15, 2010, and Dr. Hutcheson's letter to Plaintiff's attorney indicating that he had "an emotional, mental, and physical collapse." ECF No. 33-9 at 3. Plaintiff avers that if a jury did find that he lacked the capacity to resign voluntarily, then his wife's communications with Defendant in the days following September 15, 2010, provided notice of her husband's intention to take FMLA leave. Last, relying on *Byrne v. Avon Products*, 328 F.3d 379 (7th Cir. 2003),

Plaintiff argues that even if the court finds that he voluntarily resigned, his unusual behavior on September 15, 2010, provided notice of his intent to take leave before he resigned.

b. *Applicable Law*

The FMLA entitles eligible employees to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons, *see* 29 U.S.C. § 2612(a)(1), and gives them the right to return to the same or an equivalent position after such absence. *Id.* § 2614(a)(1); *see also Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006). An employee is entitled to FMLA leave for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D) 2611(11).

To establish unlawful interference with an entitlement to FMLA benefits, an employee must show that: 1) he was an eligible employee; 2) his employer was covered by the Act; 3) he was entitled to leave under the FMLA; 4) he gave his employer adequate notice of his intention to take leave; and 5) the employer denied him FMLA benefits to which he was entitled. *Rodriguez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 516 (D. Md. 2008) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)). With respect to the fourth element, an employee need not expressly invoke the FMLA or assert rights under the Act to provide adequate notice. *Dotson v. Pfizer*, Inc., 558 F.3d 284, 295 (4th Cir. 2009). An employee, however, must provide sufficient information for the employer to determine whether the FMLA might apply to the request. 29 C.F.R. §§ 825.302(c), .303(b).

Although the FMLA requires employees to notify their employers of the need for foreseeable leave, 29 U.S.C. § 2612(e)(1), the Act itself does not contain a notice requirement for

unforeseeable leave.  The regulations, however, provide that "[w]hen the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable."  29 C.F.R. § 825.303(a).  It is expected that the employee "will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances . . . ." *Id.*  "The regulations implementing the FMLA provide that when an employee's need for FMLA leave is unforeseeable . . . , '[n]otice may be given by the employee's spokesperson (e.g., spouse, adult family member, or other responsible party) if the employee is unable to do so personally.' " *Millea v. Metro–North R. Co.*, 658 F.3d 154, 161–62 (2d Cir. 2011) (quoting 29 C.F.R. § 825.303(a)).

c. *Analysis*

Plaintiff contends that on September 15, 2010, he was an "eligible employee" who suffered from an FMLA-qualifying condition and that Defendant's decision to terminate his employment constituted an unlawful interference with his right to take a medical leave of absence under the FMLA.  The parties do not dispute whether Defendant was an employer covered by the Act or whether Plaintiff's employment status prior to September 15, 2010, qualified him as eligible for the Act's protection.  The parties dispute the following three points: 1) whether Plaintiff voluntarily resigned before he sought FMLA leave; 2) whether Plaintiff provided adequate notice of his intention to take leave; 3) and whether Plaintiff suffered from an FMLA-qualifying health condition.  For the purposes of summary judgment, the court assumes that Plaintiff suffered from an FMLA qualifying condition.

i. Voluntary Resignation

In considering whether Plaintiff voluntarily resigned, the court must make two findings. First, the court must determine whether Plaintiff's conduct on September 15, 2010, manifested an intent to resign. Second, the court must determine whether Plaintiff's resignation was voluntary.

As to the first issue, Plaintiff does not dispute that he made a number of comments that he was "gone" and that he packed his personal belongings and left work in the middle of a weekday. Plaintiff's vague recollection of the events that took place on September 15, 2010, are not adequate to rebut the deposition testimonies and documentary evidence that Defendant proffers in support of its motion for summary judgment.

Plaintiff testified in his affidavit that he has "very little recall of the day," referring to September 15, 2010. In Plaintiff's deposition testimony, he also admitted that he does not have a detailed recollection of what happened on the day in question. Plaintiff does not dispute that he left work early, that he told Boucher, "I just need to leave," or that he called Miller-Marshall when he returned home that day. Plaintiff has not produced evidence to contradict Miller-Marshall's detailed notes of their conversation after Plaintiff left work on September 15, 2010, which report Plaintiff's inquiries with regard to post-termination health benefits. Accordingly, the court finds that Plaintiff manifested an intent to resign from his employment on September 15, 2010.

The court now turns to the question of whether Plaintiff's resignation was voluntary. First, the court must determine what standard the court should apply to evaluate whether Plaintiff's resignation was voluntary. The FMLA does not define the term "voluntary resignation."

Relying on *Lau v. Behr Heat Transfer System, Inc.*, 150 F. Supp. 2d 1017 (D.S.D. 2001), Plaintiff argues that his resignation was involuntary because he lacked the mental capacity that the law requires of parties to a contract. In *Lau*, the plaintiff brought a claim under the FMLA in which he asserted that his employer failed to provide him unpaid leave after being notified that the plaintiff had been involuntarily committed to a hospital for severe mental illness. *Id.* Two days after the plaintiff had been involuntarily committed, the plaintiff's wife met with her husband's supervisor and the director of human resources to explain what had occurred and that her husband might be in the hospital for as long as nine weeks. *Id.* at 1020. The plaintiff's wife mentioned that her husband would likely need unpaid leave. The director of human resources responded, "absolutely not, no way." *Id.* Instead, the director of human resources provided the plaintiff's wife a resignation form, explaining that her husband might want to resign in order to protect his employment record. *Id.* at 1021. While still committed, heavily medicated, and considered a danger to himself, the Plaintiff signed a resignation form that his wife submitted on his behalf. *Id.* Several days later, the plaintiff unsuccessfully sought to revoke his resignation. *Id.* The court in *Lau* held that the plaintiff's resignation was invalid because his mental incapacity at the time of his signature rendered the resignation involuntary. In reaching that conclusion, the *Lau* court asked whether the defendant signed the resignation form with the mental capacity that the law requires of parties to a contract.

*Lau* is distinguishable because in that case the defendant had the plaintiff sign a resignation form while knowing that he lacked competency. In that situation, contract principles were helpful for determining whether the plaintiff's signature was voluntary. Here, there is no evidence that Defendant requested Plaintiff's resignation while knowing that he was

incapacitated. Rather than rely on contract principles, the court will consider involuntary resignation as it is understood in constructive discharge cases.

In order to establish constructive discharge in the employment context, a plaintiff must show that his employer deliberately made his working conditions so objectively intolerable as to force the plaintiff to quit. *See Munday v. Waste Mgmt. of N.A., Inc.*, 126 F.3d 239, 244 (4th Cir. 1997); *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). The factual inquiry in a constructive discharge case focuses on the behavior of the employer and not the subjective state of the employee when she tendered her resignation. *See Honor v. Booz–Allen & Hamilton, Inc.*, 383 F.3d 180, 186 (4th Cir. 2004) ("The law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. Every job has its frustrations, challenges and disappointments; these inhere in the nature of work. An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers."). In Stone v. University of Maryland Medical Systems Corporation, 855 F.2d 167, 172 (4th Cir. 1988), the Fourth Circuit Court of Appeals formulated a broader test for what constitutes constructive discharge. The court laid out two circumstances under which an employee's resignation may be found involuntary: "(1) where obtained by the employer's misrepresentation or deception, and (2) where forced by the employer's duress or coercion." *Id.* As the court explained in *Stone*, those two circumstances "involve situations in which the employer's conduct has prevented the employee from making a free and informed choice." *Id.* The focus in a constructive discharge case is whether the conduct of the employer caused the employee to involuntarily resign.

In this case, there is no evidence of misrepresentation or deception or that Defendant sought to take advantage of Plaintiff's frail mental state in order to force his resignation. Under the law of constructive discharge, the plaintiff must be able to identify conduct on the part of the employer intended to cause the plaintiff's resignation. The evidence establishes a high pressure environment and a Defendant who knew that Plaintiff was overworked and experiencing stress. Plaintiff does not put forth any evidence to suggest that Defendant intentionally created that environment for the purposes of inducing Plaintiff's resignation so as to deprive him of FMLA leave. Instead, Defendant reasonably interpreted Plaintiff's actions as his resignation. Having found no genuine issue as to whether Plaintiff manifested an intent to resign on the day in question, the court finds that Plaintiff tendered a voluntary resignation on September 15, 2010.

Accordingly, Defendant's motion for summary judgment is granted on this issue.

ii. Notice

Plaintiff objects to the Magistrate Judge's finding that Defendant lacked notice of his intention to take a medical leave of absence prior to leaving work on September 15, 2010. Relying on *Byrne v. Avon Products*, 328 F.3d 379 (7th Cir. 2003), Plaintiff contends that even if the court finds that he voluntarily resigned, his uncharacteristic behavior on September 15, 2010, provided Defendant sufficient notice prior to his resignation that he was suffering from a condition that required FMLA leave. Whether or not Defendant had notice of Plaintiff's need for FMLA leave prior to his resignation is irrelevant because Plaintiff's eventual resignation relieved Defendant of its obligations under the Act. Plaintiff's reliance on *Byrne* is unavailing

*Byrne* involved a plaintiff who had given four years of model service to his employer until suddenly he began exhibiting erratic behavior at work, including sleeping on the job, hiding

14

in closets, and avoiding his duties.  *Id.* at 380.  The employer began to closely monitor the

plaintiff.  After a couple weeks of the plaintiff's unprecedented conduct, the plaintiff told a co-

worker that he was not feeling well and that he needed to take the rest of the week off.  The

plaintiff's employer refused to let him return.  *Byrne* stands for the proposition that a dramatic

change in an employee's behavior may by itself provide an employer notice of an employee's

FMLA-qualifying condition and need for leave.  In *Byrne*, the court explained that the clearest

example of this principle would involve the situation where an employee suffers a sudden heart

attack or stroke.  *Id.* at 382.  The court stated, "[i]t would be silly to require the unconscious

worker to inform the employer verbally or in writing.  Unusual behavior gives all the notice

required, and no employer would be allowed to say 'I fired this stricken person for shirking on

company time, and by the time a physician arrived and told me why the worker was unconscious

it was too late to claim FMLA leave.' "  *Id.*  The *Byrne* court determined that the plaintiff's

decision to take the week off because he was not feeling well constituted a medical leave of

absence for which his employer had notice.  *Id.*

The issue in *Byrne* was whether the plaintiff's time off from work qualified as FMLA

leave.  If it did, the defendant's decision to terminate the plaintiff's employment amounted to an

interference with his rights under the Act.  In this case, even if the court were to find that

Defendant had notice that Plaintiff suffered from an FMLA-qualifying condition and needed

leave, the facts do not support a finding that Plaintiff was terminated for seeking FMLA leave.

Plaintiff cites *Byrne* in support of his contention that even if he had voluntarily resigned,

Defendant had notice of his need for FMLA leave before he tendered his resignation.  Still,

without a termination, *Byrne* is inapposite. The court finds Plaintiff's reliance on *Byrne* unpersuasive.

Accordingly, Defendant's summary judgment motion as to Plaintiff's interference claim is granted.

**2. *Plaintiff's Retaliation Claim***

Plaintiff also appears to assert, in addition to his interference claim, a claim for retaliation. Defendant's only argument in support of summary judgment as to this claim is that Plaintiff cannot establish retaliation because he voluntarily resigned on September 15, 2010. The Magistrate Judge's Report and Recommendation does not expressly address Plaintiff's claim for retaliation. Moreover, Plaintiff's objections do not address his retaliation claim either. A prima facie case for retaliation exists where: (1) the plaintiff engaged in a protected activity; (2) the defendant took adverse action against her; and (3) the adverse action was causally connected to her protected activity. *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541 (4th Cir. 2006) (citing *Cline v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)). In the days following Plaintiff's resignation, Plaintiff's wife communicated with Defendant's employees and sought medical leave for her husband. The court agrees with Defendant that Plaintiff's voluntary resignation on September 15, 2010, precludes a finding that Defendant acted adversely towards Plaintiff in retaliation for Plaintiff's subsequent efforts to take a medical leave of absence.

Accordingly, summary judgment is granted as to Plaintiff's retaliation claim.

16

**B. *Plaintiff's Claims Under the Americans with Disabilities Act***

Plaintiff pursues two avenues of relief under the ADA. Plaintiff asserts that Defendant failed to accommodate his disability and discriminatorily discharged him on account of his disability.

**1. *Plaintiff's Discriminatory Discharge Claim***

Defendant moves for summary judgment as to Plaintiff's discriminatory discharge claim on the following grounds: 1) Plaintiff has failed to establish that he has an ADA-qualifying disability; 2) Defendant had a good faith, reasonable basis on which to conclude that Plaintiff voluntarily resigned when he left work on September 15, 2010; and 3) Defendant did not have notice of Plaintiff's disability.

a. *The Magistrate Judge's Report and Recommendation*

The Magistrate Judge found that Plaintiff failed to establish a discriminatory discharge claim under the ADA. The Magistrate Judge determined that, even assuming Plaintiff had an ADA-qualifying disability, the circumstances surrounding the dissolution of his employment do not raise a reasonable inference of discrimination based on disability. Moreover, the Magistrate Judge found that Plaintiff's voluntary resignation precludes a finding that Plaintiff was terminated on account of his disability.

At the outset, Plaintiff objects to the Magistrate Judge's conclusion that he voluntarily resigned. Plaintiff asserts that the circumstances of his departure raise an inference of discrimination. Plaintiff argues that Defendant's decision to honor his resignation, even after learning that he had experienced a mental and emotional collapse on September 15, 2010, supports a finding of discriminatory intent. When viewed against his unblemished employment

record, Plaintiff argues that a reasonable jury could find that Plaintiff terminated him on account of his disability.

b. *Applicable Law*

In order to establish a prima facie case of discriminatory discharge under the ADA, a plaintiff must prove four elements: (1) she was a "qualified individual with a disability;" (2) she was discharged; (3) at the time of her discharge, she was performing the job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Rohan v. Networks Presentation LLC*, 375 F.3d 266, 272 n.9 (4th Cir. 2004) (citing *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001)).

c. *Analysis*

The Magistrate Judge correctly recommended granting summary judgement as to Plaintiff's discriminatory discharge claim. Plaintiff does not clearly articulate what is his alleged disability, though it appears to be related to his anxiety and depression. Assuming for the purposes of summary judgment that Plaintiff's anxiety and depression qualifies as a disability under the ADA, the court finds that Plaintiff's discriminatory discharge claim fails because of his September 15, 2010 resignation. Even if the court were to find that the circumstances surrounding the dissolution of Plaintiff's employment relationship with Defendant constituted a discharge, a reasonable jury could not draw an inference of disability discrimination from these facts. Based on Plaintiff's words and action on September 15, 2010, Defendant reasonably determined that Plaintiff had resigned. Even if incorrect, Defendant reached that determination based on the opinions of Boucher, Ringer, Lynch, and Miller-Marshall. That Defendant did not

disregard the opinions of four of its employees after Plaintiff's wife informed Defendant that her husband suffered an emotional and mental collapse does not by itself suggest discrimination. *See Price v. Thompson*, 380 F.3d 209, 215 n.1 (4th Cir. 2004) (noting that "mere mistakes of fact are not evidence of unlawful discrimination" and citing *Jordan v. Summers*, 205 F.3d 337, 344 (7th Cir. 2000) ("Pretext is a lie, not merely a mistake.")); *see also DAG Petroleum Suppliers, LLC, v. B.P. PLC*, 268 F. App'x 236, 242 (4th Cir. 2008) (holding that a mistake does not establish pretext). Plaintiff does not point the court to any other facts in the record, nor does the court find any, that are supportive of a finding of discrimination.

For the reasons above, the court grants Defendant's motion for summary judgment as to Plaintiff's discriminatory discharge claim.

**2. *Plaintiff's Failure to Accommodate Claim***

Defendant's motion for summary judgment as to Plaintiff's failure to accommodate claim relies on the following grounds: 1) Plaintiff has failed to present any evidence that he was disabled on September 15, 2010 and 2) Plaintiff failed to provide Defendant notice of his disability prior to September 15, 2010.

a. *The Magistrate Judge's Report and Recommendation*

Upon her review, the Magistrate Judge found that Plaintiff's failure to accommodate claim fails as a matter of law because no reasonable jury could find that Defendant had notice of Plaintiff's disability until after he resigned. The Magistrate Judge noted that Plaintiff has not disputed that prior to leaving work early on September 15, 2010, he had never missed work for medical treatment related to his alleged disability nor mentioned to anyone at work that he had a medical condition that would require accommodation. The Magistrate also found no evidence

that Plaintiff had requested accommodation. Accordingly, the Magistrate Judge recommended that summary judgment be granted as to Plaintiff's failure to accommodate claim.

Plaintiff argues in his objections that on the evidence he has adduced, a reasonable jury could find that Defendant had notice of his disability and that he requested accommodation. In support of his contention that Defendant had notice of his disability, Plaintiff asserts that Boucher knew that he was working long hours and experiencing stress. In addition, Plaintiff points to evidence that Boucher was aware that Plaintiff was taking prescription pills to reduce his anxiety and help him sleep better. Plaintiff contends that his erratic behavior on September 15, 2010, put Defendant on notice that he had a mental impairment. As for his request for accommodation, Plaintiff points to his conversation on September 14, 2010, with Boucher in which he asked to move from his seat at the dispatch desk into a private office. Plaintiff asserts that he told Boucher that he was having difficulty with his concentration and memory as a result of the busy environment around the dispatch desk. On this record, Plaintiff challenges the Magistrate Judge's conclusion that no reasonable jury could find Defendant was on notice of Plaintiff's disability or that Plaintiff requested an accommodation.

b. *Applicable Law*

To establish a prima facie case for failure to accommodate under the ADA, an employee must show: (1) she was an individual with a disability within the meaning of the ADA; (2) the employer had notice of her disability; (3) she could perform the essential functions of the position with reasonable accommodation; and (4) the employer refused to make such accommodations. *Rhoads v. FDIC*, 257 F.3d 373, 387 n. 11 (4th Cir. 2001). The burden to provide notice is not an onerous one: the employee does not need to mention the ADA or use the

phrase "reasonable accommodation," but need only inform the employer of both the disability and the employee's need for accommodations for that disability. *Schneider v. Giant of Md, LLC*, 389 F. App'x 263, 270 (4th Cir. 2010) (citation omitted); *E.E.O.C. v. Federal Express Corp.*, 513 F.3d 360, 369 (4th Cir. 2008). " 'Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA.' " *Rock v. McHugh*, 819 F. Supp. 2d 456 (D. Md. 2011) (quoting *Huppenbauer v. May Dep't Stores Co.*, No. 95-103299, 1996 WL 607087, at *4 (4th Cir. 1996) (unpublished table opinion)).

c. *Analysis*

In his objections, Plaintiff asserts that Defendant's decision not to allow Plaintiff to move from the dispatch desk into a private office constituted a failure to accommodate. The Magistrate Judge did not have the benefit of that clarification as to what accommodation Plaintiff is alleging he requested. The court will consider Defendant's motion in light of that clarification. For the reasons that follow, the court grants Defendant's motion for summary judgment as to Plaintiff's failure to accommodate claim.

Although Defendant may have had an understanding that Plaintiff was overworked, exhausted, experiencing stress, and having difficulty sleeping, that did not place Defendant on notice that Plaintiff was disabled. Moreover, Plaintiff never described to Defendant how the request to move work spaces bore any relationship to his anxiety and depression. Although the ADA does not impose burdensome notice requirements, Plaintiff's vague demands regarding where he would like to be seated within the office were not specific enough to trigger Defendant's obligations under the act. On the limited evidence, a reasonable jury could not find

that Defendant had notice of Plaintiff's alleged disability or that he requested reasonable accommodation.

Accordingly, the court grants Defendant's motion for summary judgment as to Plaintiff's failure to accommodate claim.

### III.  CONCLUSION

The court agrees with the recommendation of the Magistrate Judge.  Upon careful consideration of the entire record, the court hereby grants Defendant's motion for summary judgment in its entirety.  ECF No. 25.

**IT IS ORDERED.**

<u>s/ Margaret B. Seymour</u>
Margaret B. Seymour
Chief United States District Judge

Columbia, South Carolina
September 28, 2012